UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORTEZ HARDRICK**<br>1211 23d Street, NW<br>Washington, DC 20019<br><br>Plaintiff,<br><br>   v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA**<br>SERVE:<br>Mayor Muriel Bowser<br>Designee Darlene Fields<br>Civil Litigation Division, Ste 6000 South<br>441 4th Street, NW<br>Washington, DC 20001<br>202-724-6507<br><br>SERVE:<br>Attorney General Brian Schwalb<br>Attorney General for the District of Columbia Office of the Attorney General for the District of Columbia<br>400 Sixth Street, N.W., Suite 10100<br>Washington, DC 20001<br><br>Defendant. | Civil Action No.: |

# COMPLAINT FOR MONEY DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

1.      Mr. Hardrick brings this civil rights action under 42 U.S.C. §§ 1983 and 1988 against the government of the District of Columbia (sometimes the "District").

2.      This action challenges the constitutionality of the District's (through its police force) arresting Mr. Hardrick the way he carried his pistol in public and the seizure and retention of his pistol for 90 days without providing him a retrieval procedure or notice and a hearing on how to retrieve the pistol and the suspension of his CPL for about 90 days.

3.      In addition to money damages and an order declaring Mr. Hardrick's arrest and detention a legal nullity, Mr. Hardrick also seek a declaratory judgment, nominal damages, and attorneys' fees.

## JURISDICTION AND VENUE

4.      This Court has original "federal question" jurisdiction over the 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

5.      The Court has supplemental jurisdiction over Mr. Hardrick's common law claims pursuant to 28 U.S. Code § 1367.

6.      Venue is appropriate in this judicial District.  Each of the claims for relief arose in this judicial District and all events described herein occurred in the District of Columbia.

## PARTIES

7.      The Plaintiff, Cortez Hardrick, is an approximately 30-year-old man who at the time of the incident – and currently – owns a pistol for which he holds a registration certificate issued by the Chief of the District of Columbia Metropolitan Police Department ("MPD") and a "CPL" (license to carry a concealed pistol) issued by the Chief of the MPD (the "Chief").

8.      The District is a municipal corporation capable of being sued under D.C. Code § 1-102 and the District is a "person" under Section 1983.

9.      During all events described herein, all police officers and other MPD employees referred to herein, named or unnamed, unless otherwise specified, were police officers or civilian employees of the District of Columbia Metropolitan Police Department acting within the scope of that employment, in furtherance of the interests of the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

## FACTUAL ALLEGATIONS

### A. Introduction

10. The Plaintiff, Cortez Hardrick, was at the time of the incident an approximately 30-year-old African American man who is a long-time resident of the District.

11. He owns his own real estate business.

12. He specializes in matching up landlords with renters who are looking for Section 8 housing.

13. He drives a Tesla automobile.

14. On July 25, 2022, at about 1:25 p.m., Mr. Hardrick was driving his Tesla, in Georgetown in the District when two occupants of another vehicle who were driving aggressively near him began shouting at him and harassing him and trying to pass him on an extremely narrow street.

15. At one point the driver of the other car fake-swerved into Mr. Hardrick's lane as though he intended to hit Mr. Hardrick's car.

16. Mr. Hardrick took out his smartphone with his right hand and tried to record the other driver's driving.

17. At the next intersection Mr. Hardrick turned left and the other car turned right.

18. Mr. Hardrick drove to Bank Alley N.W. in Georgetown.

19. The two occupants of the other vehicle then contacted MPD and falsely reported to MPD that Mr. Hardrick had exhibited a pistol to them.

20. But both occupants were clear in telling MPD officers that Mr. Hardrick never at any time pointed the alleged gun at them and that he never at any time threatened them.

21. The two occupants of the other vehicle told MPD that they did not want to press charges and that they wanted to drop the matter.

22. About five to ten minutes after the encounter Mr. Hardrick was parked on Bank Alley between M Street and Prospect Street, N.W. in Georgetown.

23. A silver unmarked MPD car stopped Mr. Hardrick.

24. Two officers of the MPD, a sergeant and a patrol officer, got out and asked Mr. Hardrick to get out of his vehicle and talk to them.

25. Mr. Hardrick complied and got out of his vehicle.

26. As soon as Mr. Hardrick got out of his Tesla the officers handcuffed his hands behind his back.

27. The officers stopped, detained and arrested Mr. Hardrick on the basis of the false report given by the occupants of the other vehicle.

28. The sergeant asked Mr. Hardrick whether he had a gun.

29. As required by law, Mr. Hardrick informed the MPD officers that he had a CPL and a registered firearm, and that the registered firearm was stored in a closed console in the cockpit of the Tesla.

30. The Sargent reached into Mr. Hardrick's pants pocket and pulled out his wallet, opened it up, and pulled out the registration card and the CPL (also a laminated card).

31. Mr. Hardrick had his handgun stored in the glove compartment of the Tesla under the Tesla screen.

32. The compartment is like a console inside the glovebox. It has two different covers. Both were closed at the time, so the gun was hidden from view and securely stored.

33. The sergeant removed the gun from the console and took it to the silver MPD car.

34. While this was going on about ten other MPD vehicles with bout 10 or 15 MPD officers arrived on the scene.

35. They blocked off Bank Alley at both the M Street and the Prospect Street ends.

36. The MPD officers detained Mr. Hardrick in handcuffs much longer than was reasonably needed to verify his version of events of the encounter with the other vehicle.

37. Part of the time the MPD detained Mr. Hardrick was to investigate the issue of how he was carrying the handgun in his Tesla.

38. The District had negligently failed to train its officers how to respond to a citizen lawfully carrying a handgun for self defense as the 2d Amendment provides and so the MPD overreacted to the fact that Mr. Hardrick was carrying his registered, licensed pistol in public for self defense as the Second Amendment provides.

39. At all times during the approximately on hour exchange the MPD kept Mr. Hardrick in hand cuffs and at all times one officer stood next to him with at least one hand on him.

40. A "white shirt" (a lieutenant or other high-ranking MPD officer) arrived on the scene.

41. The white shirt was hostile and angry towards Mr. Hardrick.

42. He began yelling at Mr. Hardrick and berating him and he falsely told Mr. Hardrick that he was illegally storing/ carrying/transporting his firearm because he had it in the closed console rather than in a holster on his hip.

43. The police report narrative states in part, "The firearm was not in a holster nor on [Mr. Hardrick's] person, therefore, the firearm was negligently stored in the vehicle."

44. The police report from the incident states that the offense code was D.C. Code @ 7-2507.02(B) (criminally negligent storage of a firearm) which governs keeping a firearm "on any premises under his control if he knows or reasonably should know that a minor is likely to gain access to the firearm without the permission of the parent or guardian of the minor." D.C. Code @ 7-2507.02(B).

45. The statute has no relevance to carrying a licensed registered handgun while driving a car.

46. The Notice of Revocation of Mr. Hardrick's registration certificate (discussed below) also states that the registration was revoked because of D.C. Code @ 7-2507.02(B) (criminally negligent storage of a firearm) although the document misstates one or two digits of the code section.

47.     The white shirt physically returned Mr. Hardrick's registration certificate and CPL to him, but he orally told Mr. Hardrick that both were legally revoked as of that time and that he was no longer able legally to carry a gun in the District.

48.     The white shirt also physically confiscated Mr. Hardrick's handgun saying that it was taken as evidence in connection with the offense of negligent storage of a handgun.

49.     The police report also states that MPD seized the gun as evidence pending an arrest warrant.

50.     But Mr. Hardrick did not violate any law or regulation regarding the way he was carrying the pistol.

51.     A few weeks later the MPD in writing revoked Mr. Hardrick's registration certificate because, it states, he criminally negligently stored his firearm pursuant D.C. Code @ 7-2507.02(B) although the document misstates one or two digits of the code section.

52.     The MPD then in writing revoked his CPL because he no longer had the required registration certificate for the pistol he intended to carry in public.

53.     Mr. Hardrick had to retain a lawyer and it took him two months to get his registration certificate and CPL restored.

54. Mr. Hardrick had to pay attorney's fees to restore his registration certificate and CPL.

55. Mr. Hardrick was without his registration certificate and CPL for two months.

56. But it took until April 7, 2023, almost ten months, before MPD notified Mr. Hardrick that he could retrieve his handgun from the Evidence Control Branch of the MPD.

B. **The District and the MPD discriminate against African Americans regarding handguns**

57. The District and the MPD discriminate against African Americans regarding handguns in both granting and revoking registration certificates and CPLs and how the MPD enforces rules against African Americans, carriage of handguns in public, and especially how they carry their handguns in vehicles.

58. The District delegated to the Chief authority to establish regulations to implement the District's gun policies.

59. The Chief implemented regulations for issuing/ revoking registration certificates and CPLs (the "the Chief's New Standard") which conditions issuance/ revocation of registration certificates and CPLs on hearsay in police records that has not been reduced to convictions.

60. The Chief's New Standard discriminates against African Americans.

61. The MPD has a pattern and practice of seizing handguns without any charges being filed and keeping the handguns for a long time or never giving them back.

62. Plaintiffs' counsel is aware of at least five other incidents where MPD has seized handguns without filing charges, classified the handguns as "evidence", and then refused to give them back or retained them for a long time, much longer than needed for an investigation.

## CLAIMS FOR RELIEF

## CLAIM 1

### False arrest/ unlawful detention

63. Mr. Hardrick adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

64. The MPD officers falsely arrested and detained Mr. Hardrick without justification by stopping and detaining him because – the white shirt and the MPD claimed falsely – he was improperly carrying his pistol.

65. Arresting and detaining Mr. Hardrick for allegedly improperly carrying his pistol in the absence of a valid statute governing his conduct injured him by subjecting him to arrest and loss of liberty and leaving him with an arrest record.

66. Accordingly, Mr. Hardrick is entitled to money damages and injunctive relief and declaratory relief as set forth below.

## CLAIM 2

### Conversion

67. Mr. Hardrick adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

68. The MPD officers and the District illegally converted and illegally detained Mr. Hardrick's pistol by seizing it "as evidence" when Mr. Hardrick was legally carrying the pistol and no statute or regulation criminalized his carriage of the pistol.

69. Accordingly, Mr. Hardrick is entitled to relief as set forth below.

## CLAIM 3

### Negligent arrest and detention of Mr. Hardrick and detention of his pistol

70. Mr. Hardrick adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

71.     The District negligently failed to train its officers how to police citizens who are legally entitled to register and concealed-carry pistols in the District after cases such as *Heller v. District of Columbia*, *Palmer v. District of Columbia* and *Wrenn v. District of Columbia* recognized the Second Amendment right to carry handguns in public for self-defense.

72.     There cases put the District and its MPD on notice of its duty to train its officers how to police citizens who legally register and concealed-carry pistols in the District.

73.     But the District failed to train its officers how to police citizens who legally register and concealed-carry pistols in the District. Septically it failed to train its officers not to over-react when a citizen tells its officers they are carrying a legal firearm and the District or the Chief failed to train its officers in the regulations how a person may legally carry a legal handgun while driving a vehicle.

74.     The proximate cause of Mr. Hardrick's arrest, detention, and the loss of his handgun for almost ten months was the District's negligent failure to train.

75.     Accordingly, Mr. Hardrick is entitled to relief as set forth below.

## CLAIM 4

### Second Amendment claim

76. Mr. Hardrick adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

77. The District and its officers violated Mr. Hardrick's Second Amendment right to carry a handgun in public for self-defense by arresting him, detaining him, and seizing and retaining for many months his handgun when he had committed no violation of any law and the District had investigated the fabricated report of the two occupants of the other vehicle and the District and the officers knew of should have known that Mr. Hardrick had committed no offense.

78. The policymaker for the District on the right to carry handguns for self-defense, and how a person may legally carry a handgun is the District and the Chief.

79. The District's and the Chief's policies regarding carrying handguns for self-defense, and how a person may legally carry a handgun, were the moving force behind Mr. Hardrick's arrest, detention, and the loss of his handgun for almost ten months.

80. Alternately, the District or the chief knew or should have known of the District's and the Chief's policies regarding carrying handguns for self-defense,

and how a person may legally carry a handgun, and how they violated the Second Amendment, but the District and the Chief acquiesced in the policies.

81.     Alternately, the District or the chief knew or should have known of the District's and the Chief's policies regarding carrying handguns for self-defense, and how a person may legally carry a handgun, and how they violated the Second Amendment, but the District and the Chief were deliberately indifferent to the risk of the violations of people's Second Amendment rights.

82.     Accordingly, Mr. Hardrick is entitled to relief as set forth below.

## CLAIM 5

### Fifth Amendment due process claim

83.     Mr. Hardrick adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

84.     The District has no regular procedures for the prompt return of the property after the government no longer needs it. The owner or their representative must bounce back and forth between the MPD and the prosecutor looking for a PD 81-C (MPD release form prosecutor must sign before the MPD will release property the MPD has classified as "evidence."

85. The District should have provided notice and a prompt post deprivation hearing to Mr. Hardrick on how to retrieve his handgun, but it failed to do so.

86. The District should have provided a prompt post deprivation hearing to Mr. Hardrick on how to challenge the MPD's classification of the handgun as "evidence," or how to get it back when the District no longer needed it, or how to get the handgun back conditionally, but it did not.

87. Superior Court Rule 41(g) is not available until a prosecutor files a case and initiates a criminal prosecution relevant to seized property, and no prosecutor ever filed a case relating to Mr. Hardrick's handgun.

88. Accordingly, Mr. Hardrick is entitled to relief as set forth below.

## CLAIM 5

### Fifth Amendment Takings claim

89. Mr. Hardrick adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

90. Mr. Hardrick violated no law justifying the seizure and retention of his handgun.

91. Thus there was no police powers need for the District to seize and retain his handgun and no reason the retain it after it was taken.

92. Accordingly, Mr. Hardrick is entitled to relief as set forth below.

## Relief Requested

Mr. Hardrick herein respectfully request that this Court grant the following relief:

**A.** Enter judgment in his favor on all his claims;

**B.** Compensatory damages.

**C.** Declare the failure to provide regular procedures for the prompt return of the property after the government no longer needs it, notice and a prompt post deprivation hearing for the return or conditional return of his property in violation of the Second Amendment and/ or the Fifth Amendment;

**D.** Award Mr. Hardrick nominal damages in connection with any declaration by this Court that the procedures or lack of complained of herein are unconstitutional.

**E.** Grant a jury trial on all claims so triable.

**F.** Award Mr. Hardrick injunctive relief in the form of sealing his relevant arrest records and declaring his arrests and citations a nullity

**G.**        Award plaintiff attorney's fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

**H.**        Grant such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

Counsel for Plaintiff Mr. Hardrick

717 D Street, N.W
Suite 300
Washington, DC 20004
Phone 202/824-0700
Email clairbornelaw@gmail.com

JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.

/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiff and the Classes