## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

CORTEZ HARDRICK,

       *Plaintiff*,

    v.

GOVERNMENT OF THE DISTRICT OF CO-LUMBIA,

       *Defendant*.

</td>
<td>

Civil Action No. 23-2151 (TJK)

</td></tr>
</table>

## <u>MEMORANDUM OPINION & ORDER</u>

In July 2022, the Metropolitan Police Department received a report that a driver had showed his firearm to occupants of another car while passing them. Several officers stopped Cortez Hardrick shortly after receiving the tip. During that encounter, the police took Hardrick's registered handgun from his car. An officer orally revoked Hardrick's registration for the handgun and the license that enabled him to carry it, and written revocations followed a few weeks later. All in all, Hardrick alleges that he was without his registration and license for two months and that it took the police department another eight months to notify him that he could retrieve his firearm.

Hardrick sued the District of Columbia over the incident a year later, bringing three common-law claims and three constitutional claims. His allegations center on his detention during the stop, the seizure and retention of his handgun, and the revocation of his registration and license. The District now moves to dismiss each claim on several grounds. The Court agrees that two deficiencies doom almost all of Hardrick's claims. It will therefore dismiss his common-law claims for failure to comply with the statutory requirement that a plaintiff, before suing the District, must provide written notice within six months of the injury. The federal claims, moreover, largely fail because Hardrick alleges no basis to hold the District liable for the actions of the officers. But

one of those claims survives: Hardrick has adequately alleged that a municipal policy caused his Second Amendment rights to be violated based on the revocation of his registration and license.

## I.   Background

Hardrick alleges that while he was driving in Georgetown two years ago on a narrow street, two individuals in an adjacent car began to act aggressively while trying to pass his car.  ECF No. 1 ("Compl.") ¶ 14.  Specifically, Hardrick says that the other driver "fake-swerved" towards his car and that both individuals shouted at him.  *Id.* ¶¶ 14–15.  Hardrick claims that he responded by trying to record the other car with his phone.  *Id.* ¶ 16.  At the next intersection, Hardrick drove towards Bank Alley, NW while the other car went the opposite way.  *Id.* ¶¶ 17, 22.  Hardrick alleges that the occupants of the other car then falsely reported to the police that Hardrick had "exhibited" a pistol when passing his car.  *Id.* ¶ 19.  The police report clarifies that the tipster told the police that Hardrick brandished the gun but "never pointed his firearm at him or threatened him."[1]  ECF No. 8-1 at 2; *see also* Compl. ¶ 20.

A few minutes later, two Metropolitan Police Department ("MPD") officers approached Hardrick while he was parked on Bank Alley and told him to exit his car.  Compl. ¶¶ 22, 24.  They quickly handcuffed him and asked whether he had a gun.  *Id.* ¶¶ 26–28.  Hardrick responded that he had both a Concealed Pistol License ("CPL") and a registered firearm, which "was stored in a

---

[1] Hardrick references the police report in his complaint, *see* Compl. ¶¶ 43–44, 49, and the District has attached a copy of the report to its Motion to Dismiss, *see* ECF No. 8-1.  As explained below, "the report is central to whether [Hardrick] gave proper notice under D.C. Code [§] 12-309."  *Harris v. Bowser*, 404 F. Supp. 3d 190, 199 n.6 (D.D.C. 2019).  Thus, "the Court may consider the police report without converting the District's motion to dismiss into a motion for summary judgment."  *Id.*; *see also, e.g.*, *Woods v. District of Columbia*, No. 20-cv-782 (CKK), 2020 WL 6392775, at *3 n.2 (D.D.C. Nov. 2, 2020) (taking judicial notice of police report); *Martin v. District of Columbia*, 720 F. Supp. 2d 19, 25 n.6 (D.D.C. 2010) (treating police report as incorporated into complaint).

closed console in the cockpit of" his car.  *Id.* ¶ 29.  The gun was not in plain view, Hardrick asserts, but was concealed by and secured underneath two covers.  *Id.* ¶ 32.  A sergeant took the gun from the console to an unmarked police car.  *Id.* ¶¶ 23, 33.

About ten to fifteen other officers arrived on the scene soon after.  Compl. ¶ 34.  Hardrick was allegedly in handcuffs the whole time, which he says was around an hour.  *Id.* ¶ 39.  A high-ranking MPD officer eventually confronted Hardrick and purportedly told him that he was "illegally storing/carrying/transporting his firearm because he had it in the closed console."  *Id.* ¶ 42.  According to Hardrick, this officer also informed him that his registration certificate and CPL "were legally revoked as of that time and that he was no longer able legally to carry a gun in the District."  *Id.* ¶ 47.  The officer also told Hardrick that his gun was taken "as evidence" in connection with the offense of "negligent storage of a handgun," and the police report later confirmed that the officers seized it as evidence "pending an arrest warrant."  *Id.* ¶¶ 48–49.  A written revocation of both the certificate and CPL followed several weeks later, the former "pursuant to D.C. Code [§] 7-2507.02(B)"—criminally negligent storage of a firearm—and the latter because Hardrick lacked the necessary registration certificate.  *Id.* ¶¶ 51–52.

Two months later, MPD restored Hardrick's registration certificate and CPL.  Compl. ¶¶ 53, 55.  But Hardrick claims that MPD did not "notif[y]" him "that he could retrieve his handgun from the Evidence Control Branch" until almost ten months after MPD took it from him.  *Id.* ¶¶ 48–49, 56.  Hardrick says that he engaged a lawyer to restore his registration certificate and CPL, but he does not claim that he tried to get his handgun back before MPD contacted him.  *Id.* ¶¶ 53–54.  No criminal prosecution was brought against Hardrick.  *Id.* ¶ 87.

Hardrick sued the District in July 2023.  He brings common-law claims for false arrest and unlawful detention (which he calls "Claim 1"), conversion ("Claim 2"), and "Negligent arrest and

detention of Mr. Hardrick and detention of his pistol" ("Claim 3").  Claim 1 alleges that the police falsely arrested and unlawfully detained Hardrick for "improperly carrying his pistol in the absence of a valid statute governing his conduct."  Compl. ¶¶ 64–65.  Claim 2 asserts that the officers and the District illegally converted his pistol by seizing it as evidence even though he was legally carrying it.  *Id.* ¶ 68.  And Claim 3 alleges that "[t]he District negligently failed to train its officers how to police citizens who are legally entitled to register and . . . carry pistols in the District."  *Id.* ¶¶ 71–73.  Hardrick also brings several constitutional claims under 42 U.S.C. § 1983.  He alleges that the District violated the Second Amendment ("Claim 4"), *see id.* ¶¶ 76–82, and that it ran afoul of the Due Process Clause ("Claim 5") and the Takings Clause of the Fifth Amendment ("Claim 6"),[2] *see id.* ¶¶ 83–92.  The District moves to dismiss all claims.

## II.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor."  *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). Still, the Court need not accept the truth of "legal conclusions."  *Iqbal*, 556 U.S. at 678.  Put another way, "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal con-clusion couched as a factual allegation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

---

[2] Hardrick brings two claims labeled as "Claim 5," so the Court refers to the second one—the Takings Clause claim—as "Claim 6" for clarity.

III.     **Analysis**

A.       **Hardrick's Common-Law Claims Are Barred by D.C. Code § 12-309**

Section 12-309 of the D.C. Code "requires potential tort plaintiffs to give written notice to the District within six months of an injury in order to bring suit." *Clark v. Flach*, 604 F. Supp. 2d 1, 7 (D.D.C. 2009).  This notice requirement applies to Hardrick's common-law claims but not to his § 1983 claims.  *See McCain v. District of Columbia*, 70 F. Supp. 3d 525, 532 (D.D.C. 2014). Because the Court agrees with the District that Hardrick has not satisfied the statutory requirement, it will dismiss his claims for false arrest, conversion, and negligence.

"The Court of Appeals for the District of Columbia has . . . repeatedly held that compliance with Section 12-309 is a mandatory condition precedent to filing suit against the District." *McCain*, 70 F. Supp. 3d at 530 (internal quotation marks and citation omitted).  That provision "serve[s] several important purposes" by providing the District with an opportunity to "conduct an early investigation into the facts and circumstances surrounding a claim," shielding the District "against unreasonable claims," and "encourag[ing] prompt settlement of meritorious claims."  *Id.* (quoting *Owens v. District of Columbia*, 993 A.2d 1085, 1088 (D.C. 2010)).  For that reason, and because § 12-309 "is a departure from the common law concept of sovereign immunity," this statutory provision "is to be strictly construed."  *Harris v. Bowser*, 404 F. Supp. 3d 190, 198 (D.D.C. 2019); *see also Doe by Fein v. District of Columbia*, 93 F.3d 861, 872 (D.C. Cir. 1996).  Plaintiffs "bear[] the burden of proving compliance with Section 12-309."  *Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126, 137 (D.D.C. 2015); *see also Sheikh v. District of Columbia*, 77 F. Supp. 3d 73, 91 (D.D.C. 2015).

Hardrick does not claim that he provided written notice.  Instead, he relies on the statutory language providing that a "report in writing by [MPD], in regular course of duty, is a sufficient

notice under this section." D.C. Code § 12-309(a). But while a report may in some cases provide notice when a claimant fails to do so, "the mere 'existence of a police report does not necessarily mean that the District has received the type of actual notice which § 12-309 contemplates.'" *Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 136 (D.D.C. 2015) (quoting *Allen v. District of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987)). Rather, "a police report of an arrest is presumptively devoid of any notice of a potential claim of injury or damage from false arrest . . . or negligence." *Allen*, 533 A.2d at 1263. Thus, to satisfy the notice requirement, a report must (1) "contain information as to time, place, cause, and circumstances of injury or damage with at least the same degree of specificity required of a written notice," and (2) "provid[e] details that set forth a reasonable basis for anticipating legal action as a consequence" of the specified injury. *Patrick*, 126 F. Supp. 3d at 136–37. Put another way, assuming a police report does not "assert[] the right to recovery" following from the identified injury, the report excuses non-compliance with the notice requirement only "if it . . . describe[s] the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability." *Allen*, 533 A.2d at 1262 (citation omitted). A report suggesting that officers' "actions were legally justified," for example, will not do for a plaintiff who failed to provide written notice. *Patrick*, 126 F. Supp. 3d at 137.

The threadbare police report here "does not satisfy Section 12-309's stringent notice requirements." *Harris*, 404 F. Supp. 3d at 200. It gives a brief description of the incident between Hardrick and the other drivers, noting that Hardrick started honking at the other car and then "briefly stopped beside [that] vehicle and brandished the listed firearm." ECF No. 8-1 at 2. The authoring officer reported that he "responded for [sic] the call for service of an aggravated assault with a gun" and conducted a stop when the police observed Hardrick parked on Bank Alley. *Id.* Next, the report says that Hardrick told the officers that he had a gun inside the car, that he had

argued with the occupants of the other car, but that he never brandished his weapon. *Id.* Hardrick's gun, the report explains, was "observed in plain sight" and was neither holstered nor on his person, rendering the weapon negligently stored in the vehicle. *Id.* So the gun was taken as evidence and Hardrick "was sent on his way pending an arrest warrant." *Id.* According to the report, the entire stop lasted about 45 minutes. *Id.* at 1.

The report's narrative does not include details that "set forth a reasonable basis for antici-pating legal action as a consequence" of the specified injury. *Patrick*, 126 F. Supp. 3d at 137 (internal quotation marks and citation omitted). Many of the circumstances that Hardrick details in his complaint—like officers handcuffing him and "yelling at . . . and berating" him—are absent from the report. *Compare* Compl. ¶¶ 39–42, *with* ECF No. 8-1 at 2. More to the point, all that this report shows is that the officers—after receiving a tip about a driver displaying a weapon during an altercation with another driver and promptly locating that driver and his handgun—stopped Hardrick for 45 minutes and seized his gun as evidence. *See Harris*, 404 F. Supp. 3d at 199 ("A report that officers lawfully arrested a suspect identified by two assault victims is unre-markable."). This description of a routine police stop does not foreshadow legal action. If it did, then virtually any run-of-the mill police report would satisfy § 12-309. But the statute does not forgive non-compliance with the notice requirement so easily. Indeed, "while a basis for potential legal action exists 'in many law enforcement operations,'" there must be something in the partic-ular "[p]olice [r]eport *itself* to suggest that this specific incident would lead to legal action against the District." *Patrick*, 126 F. Supp. 3d at 138 (quoting *Allen*, 533 A.2d at 1263); *see also Allen*, 533 A.2d at 1263 (details in report "were not sufficient in and of themselves to signal the likelihood that this incident, more than any other, would generate legal action against the District"). That something is absent from MPD's quarter-page summary of Hardrick's stop.

For his part, Hardrick also insists that other MPD-authored reports collectively provide additional information that satisfies the notice requirement.  He asserts that the "entry in the property book, the PD 81 . . . , the MPD booking database," and the notice of revocation for his registration certificate and CPL "doubtless provide information about the incident."  ECF No. 10 at 5–6.  But "the law is clear: Section 12-309 is satisfied only by a specific type of MPD report—one that covers all the requisite information, *easily found in one place*."  *McCain*, 70 F. Supp. 3d at 532 (emphasis added) (quoting *Jenkins v. District of Columbia*, 379 A.2d 1177, 1178 (D.C. 1977)); *see also Patrick*, 126 F. Supp. 3d at 137 (same).  A plaintiff may not meet his burden under § 12-309 by gesturing at a hodgepodge of police records and claiming that whatever "information about the incident" contained in it will include a reasonable basis for suspecting legal action.  Hardrick offers nothing but speculation about what these records will contain, and even his speculation is light on details.  Further still, he undercuts his reliance on the "MPD booking database" by later arguing that he was never "formally arrested in the sense that he was . . . booked into the MPD's booking database."  ECF No. 10 at 27–28.  In short, a plaintiff who does not give notice to the District runs the risk that the police report will not save his claims from § 12-309.  That is the case here.

Hardrick also contends that the report's citation to D.C. Code § 7-2507.02(b) is enough to inform the District that he might bring suit.  That provision, he says, "by its terms applies to premises" and is not "even remotely applicable to the driver of a vehicle."  ECF No. 10 at 6.  Hardrick thus seems to reason that the District should have identified that error and predicted legal action.  But Hardrick never explains why § 7-2507.02(b)—which applies to negligent storage of firearms "on *any* premises under his control"—could not apply to a handgun stored in a person's car.  D.C. Code § 7-2507.02(b) (emphasis added).  Indeed, the statutory specification "under his control"

might suggest that the statute covers property, like a car, in which a firearm could be stored. In any event, the police report also notes that the reason for the stop was a suspected "aggravated assault with a gun." ECF No. 8-1 at 2. That potential crime provided the basis for the stop and provided additional grounds for taking the gun as evidence, another reason why the police report does not suggest that Hardrick would sue the District for injuries resulting from this encounter. After all, "even if probable cause does not support arrest for the offense charged by the arresting officer, an arrest (and search incident thereto) is nonetheless valid if the same officer had probable cause to arrest the defendant for another offense." *United States v. Bookhardt*, 277 F.3d 558, 565 (D.C. Cir. 2002).

Because Hardrick did not provide notice of his claims under § 12-309, and because the police report did not fill the gap, the Court will dismiss his claims for false arrest, conversion, and negligence.[3]

### B.      Hardrick Fails to Allege Municipal Liability for Most of His § 1983 Claims

"To state a claim for relief against a municipality under section 1983," a plaintiff must plead both a "predicate constitutional violation and that a custom or policy of the municipality caused the violation." *Blue v. District of Columbia*, 811 F.3d 14, 18 (D.C. Cir. 2015) (internal

---

[3] By its terms, § 12-309 applies to actions against the District "for unliquidated damages"; the statute does not refer to claims for injunctive relief. Hardrick's complaint requests "injunctive relief in the form of sealing his relevant arrest records and declaring his arrests and citations a nullity." Compl. at 17. But he never argues that his common-law claims should survive to the extent they seek such relief. *See generally* ECF No. 10 at 4–7 (arguing only that the police report and other documents satisfy the notice requirement). So Hardrick has waived any such argument. *See, e.g.*, *Fair Lines Am. Foundation Inc. v. U.S. Dep't of Comm.*, 619 F. Supp. 3d 212, 222 n.9 (D.D.C. 2022). In any event, it is not clear what injunctive relief Hardrick could be seeking with his common-law claims; he says that he was "not given a 'citation'" and contends that he was "not formally arrested" or "booked into the MPD's booking database on an arrest charge." ECF No. 10 at 27–28.

quotation marks and citation omitted).  In other words, "D.C. is not liable under § 1983 for injuries 'inflicted solely by its employees or agents'"; instead, "a city policy or practice" must have "cause[d] an injury."  *Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Establishing such a custom or policy requires a plaintiff "to identify (1) an official policy explicitly adopted by D.C., (2) actions by a D.C. policy-maker with final decision-making authority, (3) repeated behavior by D.C. municipal employees that have reached the level of a custom, or (4) a failure to act by D.C. that shows deliberate indifference to the potential for such violations."  *Id.*  A plaintiff must therefore "plead facts that plausibly support one of th[e]se four types of municipal policies," including the "elements of the relevant type" of policy.  *Id.*  It is "not [the Court's] role" to "try to surmise which theory of municipal liability has the strongest support in the complaint."  *Id.* (quoting *Blue*, 811 F.3d at 20).

Even when a plaintiff adequately alleges a municipal policy, he must also show "an affirmative link between the policy and the *particular* constitutional violation alleged."  *Blue v. District of Columbia*, 850 F. Supp. 2d 16, 31 (D.D.C. 2012) (emphasis added) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).  This means that a plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights"—*i.e.*, that the policy was the "moving force" behind the alleged constitutional injury.  *Cherry v. District of Columbia*, 170 F. Supp. 3d 46, 49–50 (D.D.C. 2016) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997), and then *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

The District contends that Hardrick failed to allege that a municipal policy or practice caused any of the asserted constitutional violations under the Second and Fifth Amendments.  *See* ECF No. 8 at 27–30.  Recall that Hardrick brings three constitutional claims: (1) a Second Amendment claim based on the seizure and retention of his handgun, *see* Compl. ¶¶ 76–82; (2) a Fifth

Amendment claim under the Due Process Clause for the deprivation of his handgun, *see id.* ¶¶ 83–88; and (3) a Fifth Amendment claim under the Takings Clause for the "seizure and retention of his handgun," *id.* ¶¶ 89–92.  He also describes the two-month revocation of his registration and CPL.  Although Hardrick's complaint does not clearly assert that the revocation violates the Second Amendment, he has alleged facts supporting this constitutional injury.  That Second Amendment claim, it turns out, is the only claim that the Court need address on the merits.  Hardrick fails to allege municipal liability for the other § 1983 claims, so the Court need not determine whether he pleaded a constitutional injury for them.  *See, e.g.*, *West v. District of Columbia*, No. 22-cv-3107 (CRC), 2023 WL 5929442, at *2 (D.D.C. Sept. 12, 2023); *Plater v. Dist. of Columbia Dep't of Transp.*, 530 F. Supp. 2d 101, 107–08 (D.D.C. 2008).

The Court starts with the Fifth Amendment claims.  These alleged violations are naturally keyed to the seizure and retention of Hardrick's handgun.  The Fifth Amendment's Due Process clause "requires that no person be deprived of his or her property without due process of law." *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 123 (D.D.C. 2012).  And the Takings Clause insists on just compensation when the government takes "private property for public use."  *Bennis v. Michigan*, 516 U.S. 442, 452 (1996).  Hardrick says that the District violated these constitutional protections by depriving him of his handgun without "notice and a prompt post deprivation hearing," Compl. ¶ 85, and by taking his gun for ten months without a valid basis, *see id.* ¶¶ 56, 90–91.  Because he sued a municipality, though, Hardrick must also allege the "contours of" a municipal policy that was the moving force behind each asserted violation.  *Blue*, 811 F.3d at 20.

He has not done so.  Hardrick's complaint does not explicitly link any alleged policy to his Takings Clause claim.  For his due-process claim, he alleges that the District "has no regular procedures for the prompt return of property after the government no longer needs it."  Compl. ¶ 84.

But that allegation does not specify a municipal policy that caused either the initial deprivation or the ten-month retention.  Instead, Hardrick seems to rely on the "absence of an explicit policy," meaning that he must "allege concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists." *Univ. Legal Servs., Inc. v. District of Columbia*, No. 18-cv-301 (KBJ), 2019 WL 1430045, at *9 (Mar. 30, 2019) (Jackson, J.).  To clear that "high hurdle," he must show a "persistent, pervasive practice" that "was so common and settled as to be considered a custom or policy." *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 346 (D.D.C. 2018) (citation omitted).

Even construing Hardrick's theory of municipal liability this way, the Court finds that his allegations fail to meet the standard.  Elsewhere, Hardrick alleges that the police department "has a pattern and practice of seizing handguns without any charges being filed and keeping the handguns for a long time or never" returning them.  Compl. ¶ 61.  He adds that his counsel knows "of at least five other incidents where" the police have "seized handguns without filing charges" and kept them "much longer than needed for an investigation." *Id.* ¶ 62.  But the "mere assertion in one's complaint that a city has a 'custom and practice' of committing the complained of constitutional violation is not" enough "to satisfy the relevant pleading standard[]." *Page v. Mancuso*, 999 F. Supp. 2d 269, 285 (D.D.C. 2013) (Jackson, J.).  Indeed, another court in this District found that a plaintiff failed to allege a municipal practice or custom with similar allegations—namely, "that [the police department] routinely and unlawfully holds cash seized from individuals who have been arrested—many of whom are never charged with a crime—for months or even years past the point where the government might have any continuing legitimate interest in retaining said cash while providing no process to challenge that retention." *West*, 2023 WL 5929442, at *3.

Moreover, the allegations about these five other incidents are far too cursory to support the

inference that the District's employees were persistently and pervasively engaging in this conduct. The complaint includes no factual details about them and, crucially, provides no information about when these incidents happened.  The Court is thus left to guess whether these five incidents occurred over the course of a week or a decade, rendering it impossible to determine whether the practice is "so persistent and widespread as to practically have the force of law."  *Page*, 999 F. Supp. 2d at 284 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  Not only does Hardrick fail to allege facts that MPD *often* engages in this conduct, but he also offers no details that would enable the Court to assess whether the five incidents even show constitutional violations.  *Cf. Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 93–94 (D.D.C. 2011) ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces." (citation omitted)).  In short, this "single conclusory statement about" unspecified incidents occurring over an unknown period under unclear circumstances is "insufficient" to plausibly allege municipal liability.  *Plater*, 530 F. Supp. 2d at 108.[4]

Hardrick's other allegations relating to municipal policy do not appear to connect to his

---

[4] Hardrick cites a trio of cases to support his practice-or-custom theory.  ECF No. 10 at 36–37.  None cures the deficiencies in his complaint.  His first case, *Jackson v. Valdez*, 2021 WL 1183020 (5th Cir. Mar. 29, 2021), was withdrawn, and the superseding opinion concluded that "allegations of two incidents of strip searches and four incidents of sex-based classifications of two transgender detainees" over a five-year span were too "isolated" to constitute actionable municipal custom, *see Jackson v. Valdez*, 852 F. App'x 129, 135–36 (5th Cir. 2021).  In other words, a complaint with more detailed allegations than Hardrick's fell short.  His second case has a more favorable holding, but the facts are too different to help Hardrick.  An abuse victim detailing "six different instances, involving multiple different caseworkers, in which [she] was interviewed about her abuse in front of her" alleged abusers is a far cry from Hardrick's counsel's reference to five unspecified incidents with no supporting factual detail.  *Lipman v. Budish*, 974 F.3d 726, 748–49 (6th Cir. 2020).  And Hardrick's third case denied a motion that did not seek to dismiss the § 1983 claim and so did not discuss the standard for municipal liability.  *See generally James v. District of Columbia*, 869 F. Supp. 2d 119 (D.D.C. 2012).

Fifth Amendment claims, but they would not help.  For example, he alleges that the District "discriminate[s] against African Americans regarding handguns in both granting and revoking registration certificates and CPLs and how [the police department] enforces rules."  Compl. ¶ 57.  The police chief has also allegedly "implemented regulations for issuing/revoking registration certificates and CPLs" that also "discriminate[] against African Americans."  *Id.* ¶¶ 59–60.  To be clear, Hardrick brings no claim hinging on racial discrimination.  Still, even if these allegations did plead a municipal policy, they do no suggest that any such policy (about the revocation of registration certificates and CPLs) was the moving force behind any Fifth Amendment violations related to the seizure and retention of Hardrick's *handgun*.  Hardrick does not allege that the revocation of his certificate and CPL violated the Fifth Amendment's Due Process Clause or its Takings Clause.  Nor does he claim that the revocation caused the deprivation of the handgun that underlies those claims.  To the contrary, his allegations suggest the two were unrelated.  Indeed, the police took the gun *before* an officer "orally told Mr. Hardrick that" his registration and CPL "were legally revoked."  Compl. ¶¶ 33, 47 (alleging that the sergeant who first stopped Hardrick removed the gun and that a higher-ranking officer who arrived later informed Hardrick of the revocation).  And the police allegedly seized the gun "as evidence in connection with the offense"—not because Hardrick had lost his required credentials.  *Id.* ¶¶ 48–49.  The revocation, moreover, lasted only two months, so it could not have caused the *ten*-month retention of the handgun.  *Id.* ¶¶ 55–56.  In sum, because Hardrick does not allege that the revocation was the moving force behind the Fifth Amendment violations, "[n]o causal connection exists" between the revocation policy and those constitutional injuries.  *Blue*, 850 F. Supp. 2d at 31.

In response to the District's argument that Hardrick "alleges nothing at all concerning municipal liability for his Fifth Amendment claims," ECF No. 8 at 27–28, he points to "General Order

601.1." ECF No. 10 at 36.  He does so only for his due-process claim, forgoing any argument that a municipal policy caused the alleged violations of the Takings Clause.  But "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje Casa de Cambio, S.A. de C.V. v. USPS*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citation omitted).  That rule holds true when a § 1983 plaintiff seeks to "supplement [his] complaint allegations" about municipal liability "through later briefing."  *West*, 2023 WL 5929442, at *4 (rejecting plaintiffs' effort to add "two public sources discussing issues related to the District's retention of seized property" as support for municipal liability).  Thus, he cannot save his deficient complaint by offering these new allegations in his opposition.

In any event, Hardrick's briefing fails to explain how General Order 601.1—which allegedly "does not set a deadline or even [provide] any guidance to investigators for releasing property"—amounts to a municipal policy or practice that caused a Fifth Amendment violation.  ECF No. 10 at 36.  As explained, Hardrick does not plausibly allege a custom or practice that led to the seizure and retention of his handgun, so General Order 601.1's purported *lack* of policy directives on property return cannot create municipal liability.  Hardrick also gestures at an unspecified "website" that he says "establishes that the District is deliberately indifferent to the rights of owners' property." ECF No. 10 at 37.  But whatever the mystery website may say, Hardrick's "conclusory" two-sentence invocation of the deliberate-indifference theory—"a stringent standard of fault"— does not show that his complaint adequately alleges that the District "knew or should have known of a risk that constitutional violations would occur."  *Page*, 999 F. Supp. 2d at 282–84 (merely "mention[ing] 'deliberate indifference'" in a complaint is insufficient without allegations of "the particular legal grounds for that assertion" and a "factual basis for the claim") (quoting *Connick*, 563 U.S. at 61).

As for the Second Amendment allegations, Hardrick's complaint again focuses on the police's confiscation of his handgun for ten months.  Specifically, he says that the "District and its officers violated [his] Second Amendment right to carry a handgun in public for self-defense by arresting him, detaining him, and seizing and retaining for many months his handgun."  Compl. ¶ 77.  The District insists that this claim should be analyzed under Fourth Amendment standards, even though "wrongs" that might "affect more than a single right . . . can implicate more than one of the Constitution's commands."  *Soldal v. Cook County, Illinois*, 506 U.S. 56, 70 (1992).  But again, the Court need not address whether Hardrick has alleged a Second Amendment violation based on the seizure and retention of his handgun.  That claim, like his Fifth Amendment claims, is untethered to any municipal policy that might have caused the alleged constitutional violation.

Hardrick offers boilerplate allegations of municipal liability for this Second Amendment claim.  He asserts that the "District's and the Chief's policies regarding carrying handguns for self-defense . . . were the moving force behind" the violation.  Compl. ¶ 79.  "Alternatively," Hardrick alleges that the District and police chief "acquiesced in the policies" despite knowing about them and were "deliberately indifferent to the risk" of Second Amendment violations.  *Id.* ¶¶ 80–81.  But these "conclusory allegations . . . merely recite the legal standard," so they "fall short of the requirements for pleading municipal liability."  *Haight v. O'Bannon*, 102 F. Supp. 3d 179, 182 (D.D.C. 2015).  Simply claiming that "policies regarding handguns for self-defense" led to the seizure of Hardrick's gun tells the Court nothing about the "contours of any type of municipal policy."  *Givens*, 111 F.4th at 122 (no municipal liability alleged where plaintiff offered "conclusory assertions that D.C. has an unspecified number of unidentified policies") (citation omitted).  Thus, Hardrick not only fails to identify a particular policy or policymaker action, but he also provides no factual basis for inferring that a specific policy *caused* his constitutional injury.  Nor

does he allege any "facts that could comprise a pattern or custom" that the District should have known about; he names no "other complainants" in similar cases and "cite[s]" no "statistics or reports on" confiscations of handguns. *Odom v. District of Columbia*, 248 F. Supp. 3d 260, 268 (D.D.C. 2017). And his "conclusory" recitation of deliberate indifference comes nowhere near that "stringent standard of fault." *Page*, 999 F. Supp. 2d at 282–84.

Hardrick again tries to patch up these pleading deficiencies with General Order 601.1, which he argues "does not impose any time limit" or "even offer any guidance" for releasing property taken as evidence. ECF No. 10 at 19. But as before, Hardrick may not amend his complaint with his "brief[] in opposition to [the] motion to dismiss." *Arbitraje Casa de Cambio*, 297 F. Supp. 2d at 170 (citation omitted). His complaint says that unspecified "policies regarding carrying handguns for self-defense" were "the moving force" behind the "loss of his handgun for almost ten months," and General Order 601.1's lack of "guidance" on returning evidence is not such a policy. Compl. ¶ 79. And as explained, Hardrick has not alleged that the revocation of his registration certificate and CPL caused the seizure and retention of his handgun, nor has he adequately alleged a custom or practice (or deliberate indifference) that caused this particular alleged violation. The conclusory reference to the "pattern and practice of seizing handguns" and the claim that his counsel knows about five other unspecified incidents are not enough. *Id.* ¶¶ 61–62.[5]

---

[5] In a Notice of Supplemental Authority, Hardrick claims that the District "[l]ikely" kept his handgun "pursuant to" D.C. Code § 7-2502.10(d), which permits the MPD Chief to maintain possession of a firearm while the owner is prohibited from lawful possession. ECF No. 17 at 1– 2. The District argues that this notice is improper for several reasons, including that it is an impermissible surreply in disguise. *See generally* ECF No. 18. The main problem for Hardrick, however, is that this statute does not fix the shortcomings of his complaint. His allegations never suggest that the moving force behind the retention of the handgun was a policy related to the revocation of the registration certificate and CPL. In fact, as described above, his allegations suggest the opposite; MPD restored his certificate and CPL after only two months but allegedly kept his

C.    **Hardrick's Allegations About the Revocation of his Registration Certificate and Concealed Pistol License**

Putting aside the handgun itself, Hardrick argues that he stated a Second Amendment violation based on the revocation of his registration certificate and CPL.  ECF No. 10 at 14–15.  The District responds that the complaint "does not allege revocation of [Hardrick's] registration certificate and CPL as a predicate Second Amendment violation."  ECF No. 14 at 16.  Instead, the District says, Hardrick's allegations focus exclusively on the seizure of the handgun and do not say that the regulations governing revocation "violate the Second Amendment."  *Id.*  But "complaints need not plead law or match facts to every element of a legal theory" to survive a motion to dismiss.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (citation omitted).  What matters is whether the *factual* allegations "show that [the] claim has substantive plausibility."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).  In other words, Hardrick must "allege[] all the facts needed to state [a Second Amendment] claim," but he need not explicitly pin those facts to a legal theory.  *Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 99 (D.D.C. 2016).

Hardrick's factual allegations support a plausible Second Amendment violation based on the revocation and—unlike his other constitutional claims—a theory of municipal liability.  The Court starts with whether Hardrick plausibly alleged a Second Amendment violation.  According to Hardrick, he carried a "registered, licensed pistol in public for self defense."  Compl. ¶ 38.  But when the police stopped him, an officer told him that his "registration certificate and CPL" were "legally revoked" and that "he was no longer able legally to carry a gun in the District."  *Id.* ¶ 47.

_____

gun for another eight months.  *See* Compl. ¶¶ 55–56.  Hardrick's notice of supplemental authority cannot reverse that pleading choice by citing a D.C. Code provision.

A written revocation followed weeks later, informing Hardrick that his registration certificate was revoked because he "criminally negligently stored his firearm." *Id.* ¶ 51.  That triggered the revocation of his CPL "because he no longer had the required registration certificate." *Id.* ¶ 52.  In the end, Hardrick was "without his registration certificate and CPL for two months" despite, in his view, committing no crime.  *Id.* ¶ 55; *see also, e.g.*, *id.* ¶ 77 ("[T]he District and the officers knew o[r] should have known that Mr. Hardrick had committed no offense.").  And he attributes that deprivation to the police chief's implementation of "regulations for issuing/revoking registration certificates and CPLs" that condition revocation "on hearsay in police records that has not been reduced to convictions."  *Id.* ¶ 59.

The complaint is, to be sure, not a model of clarity.  But these facts raise a plausible Second Amendment claim.  Such claims are now governed by the test established in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022).  Under that framework, "the Constitution presumptively protects" an individual's conduct so long as "the Second Amendment's plain text covers" the relevant conduct.  *Id.* at 17.  When that is the case, the government must "demonstrate that [its] regulation is consistent with this Nation's historical tradition of firearm regulation."  *Id.*; *see also, e.g.*, *id.* at 38–39 (holding that respondents "failed to meet their burden to identify an American tradition justifying New York's proper-cause requirement").  The Supreme Court has since clarified that *Bruen*'s test is "not meant to suggest a law trapped in amber."  *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024).  Still, for a restriction on protected conduct to survive constitutional scrutiny, the government must "show [that] the restriction is consistent" with historical practice.  *Id.* at 1896.

The Second Amendment's text covers Hardrick's conduct of carrying a firearm for self-defense, and the District makes no effort to explain why, based on historical analogs, Hardrick has

not stated a claim.  Hardrick alleges that he carried a licensed and registered handgun for self-defense.  *See* Compl. ¶¶ 38, 73, 77.  And the Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home."  *Bruen*, 597 U.S. at 10; *see also id.* at 47 ("[H]andguns" are "the quintessential self-defense weapon." (citation omitted)).  Hardrick also says that the District restricted his ability to engage in that conduct by revoking his registration certificate and CPL for criminally negligent storage of a firearm despite never charging him with or convicting him of that crime.  *See* Compl. ¶¶ 46–47, 51–55, 59.  Under *Bruen*, therefore, the Constitution "presumptively protects" Hardrick's conduct, and the District never argues that Hardrick has failed to state a claim because the regulation's application to that conduct "is consistent with this Nation's historical tradition of" regulating firearms.  *Bruen*, 597 U.S. at 17.  Instead, the District puts all its eggs in other baskets, arguing that Hardrick did not properly raise a Second Amendment claim based on the revocation and that, even if he did, he failed to allege municipal liability.  *See* ECF No. 14 at 15–17.

In a similar case in this District, another court has held that a plaintiff stated a Second Amendment claim based on the revocation of his registration certificate and CPL where the District "did not marshal any evidence or adequately explain how history and tradition support excluding someone from the Second Amendment's scope" merely "because they were arrested but never convicted."  *Allen v. District of Columbia*, 20-cv-2453 (TSC), 2023 U.S. Dist. LEXIS 60950, at *26 (D.D.C. Mar. 31, 2023).  True, *Allen* considered a now-overturned Fifth Circuit decision, *see United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *reversed and remanded by* 144 S. Ct. 1889 (2024), and the court later stayed the case pending the Supreme Court's resolution of *Rahimi*, *see Allen v. District of Columbia*, 20-cv-2453 (TSC), 2024 U.S. Dist. LEXIS 17539 (D.D.C. Feb. 1, 2024).  But when the Supreme Court decided *Rahimi*, it did not alter *Bruen*'s rule that

governments must justify restrictions on conduct that is protected by the Second Amendment, and the District has not argued that *Rahimi* somehow answers the constitutional question that this revocation presents.  Giving Hardrick the benefit of reasonable inferences from his factual allegations, the Court understands his complaint to allege that MPD revoked his registration certificate and CPL based on suspected criminal activity that was never "reduced to [a] conviction[]"—or for that matter, even an arrest.  Compl. ¶ 59.  In other words, the District restricted Hardrick's ability to carry a handgun for self-defense based on conduct for which he was briefly stopped "but never convicted," and the District "did not marshal any [historical] evidence" supporting that kind of restriction.  *Allen*, 2023 U.S. Dist. LEXIS 60950, at *26.  With no argument from the District on this point, the Court finds that Hardrick has stated a predicate constitutional violation based on the revocation.

Hardrick must, however, also allege that a municipal policy or practice was the moving force behind the violation.  Again, his complaint and briefing could have spelled out his theory of municipal liability more clearly.  But Hardrick alleges, with reasonable specificity, that the MPD Chief implemented regulations that condition the "revocation of registration certificates and CPLs on hearsay in police records that has not been reduced to convictions."  Compl. ¶ 59.  And he claims that MPD revoked his registration certificate and CPL for criminally negligent storage of a firearm, *id.* ¶¶ 46, 51–52—a crime he says he did not commit, *id.* ¶ 50, and for which the District never charged him, *see id.* ¶ 87.  These allegations describe the "contours of [a] policy" of revoking registration certificates and CPLs based on suspected crimes that do not result in convictions (or even charges), and they assert that the policy caused the constitutional injury.  *Odom*, 248 F. Supp. 3d at 267 (quotation omitted).  Hardrick also alleges that this policy was an express municipal policy, so "one application" of it—assuming the policy "in and of itself violated [his] constitutional

rights"—is enough to "satisfy fully *Monell*'s requirement" that a municipality be held liable only when "constitutional violations result[] from [its] official policy." *Tuttle*, 471 U.S. at 822; *see also, e.g.*, *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) ("The express policy theory applies, as the name suggests, where a policy explicitly violates a constitutional right when enforced.").

Resisting this conclusion, the District contends that Hardrick's complaint "does not identify any specific MPD or District policy." ECF No. 14 at 16. It takes aim at Hardrick's references to the MPD Chief's policymaking authority and General Order 601.1, neither of which appears in the complaint. *Id.* at 16–17. But Hardrick argues that MPD revoked his CPL under D.C. Code § 7-2509.05 and D.C. Municipal Regulation § 24-2341.5, which enable the MPD Chief to "summarily suspend or limit, without a hearing, a concealed carry license" upon a determination that the licensee's conduct is "an imminent danger to the health and safety of a person or the public." *See* ECF No. 10 at 17. Even assuming the Court could not consider these citations in determining whether Hardrick has stated a claim, all they do is provide even more specificity about Hardrick's claim, already set forth in the complaint, that the District had a policy of revoking registration certificates and CPLs based on suspected, but not proven, criminal activity.[6] Because "[t]here is no heightened pleading standard in alleging municipal liability," *Cohen v. Bd. of Trs. of Univ. of Dist. of Columbia*, 311 F. Supp. 3d 242, 257–58 (D.D.C. 2018) (citation omitted), Hardrick's

---

[6] Because the Court may "take judicial notice of state statutes and regulations" when deciding a Rule 12(b)(6) motion, *Rahmaan v. Fed. Nat'l Mortg. Ass'n*, No. 02-cv-1822 (RWR), 2003 WL 21940044, at *3 n.4 (D.D.C. Mar. 20, 2003), the Court could—if it needed to—likely take judicial notice of D.C. Code § 7-2509.05 and D.C. Municipal Regulation § 24-2341. *See also, e.g.*, *Barkai v. Mendez*, 629 F. Supp. 3d 166, 188 (S.D.N.Y. 2022) (same for "state statutes"); *Collier v. Kendall*, No. 21-cv-2781 (TNM), 2022 WL 21295819, at *2 (D.D.C. May 19, 2022) (explaining that courts "may take judicial notice of a public record like [agency] regulations" when deciding a Rule 12(b)(6) motion).

description of that policy in the complaint is enough.

To the extent the District faults Hardrick for not citing statutory and regulatory provisions in the complaint, it "demand[s] far too much." *Coclough v. District of Columbia*, No. 19-cv-2317 (BAH), 2020 WL 5569947, at *7 (D.D.C. Sept. 16, 2020). In *Coclough*, for example, the court rejected the government's argument that "simply stat[ing] that the 'blacklist' itself is the municipal policy" was insufficient. *Id.* Instead, the plaintiff's reference to the "blacklist" on employment "adequately allege[d] the existence of a municipal policy . . . , the implementation of which caused her constitutional injury." *Id.* So too here. Hardrick's *factual* allegations support the inference that the District had a policy of revoking registration certificates and CPLs based on suspicions of criminal activity alone. And he says that his revocation resulted from such a policy. Because he alleged these facts, his "invo[cation] in his Opposition" of "statutory [and regulatory] provision[s] not cited in his . . . [c]omplaint" does not amount to prohibited amendment-via-briefing. *Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d at 99 (holding that an argument does "not emerge out of nowhere" in these circumstances).

Because Hardrick has alleged a predicate constitutional violation based on the revocation and a municipal policy that caused this violation, the Court will deny the District's motion insofar as it seeks dismissal of that claim.[7]

---

[7] As mentioned, Hardrick filed a notice of supplemental authority that the District claims is improper. *See* ECF Nos. 17, 18. The notice argues, among other things, that the Supreme Court's decision in *Rahimi* supports his Second Amendment claim. The Court did not consider Hardrick's notice in deciding this motion, however, because it did not need to. Instead, the Court assessed Hardrick's factual allegations in light of relevant caselaw, including *Bruen* and *Allen*, as it would have had Hardrick never filed his notice. The Court therefore denies the District's Motion to Strike, *see* ECF No. 18, as moot.

IV.    **Conclusion and Order**

For all the above reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No.8, is **GRANTED IN PART** and **DENIED IN PART**.   The Motion to Dismiss is **GRANTED** as to Claims 1, 2, 3, 5, and 6, as well as to Claim 4 to the extent that claim challenges Defendant's seizure and retention of Plaintiff's handgun.   These claims are **DISMISSED**.   The Motion to Dismiss is **DENIED** as to Claim 4—Plaintiff's Second Amendment claim—to the extent that claim is based on the revocation of his registration certificate and Concealed Pistol License.   Further, it is **ORDERED** that Defendant's Motion to Strike, ECF No. 18, is **DENIED** as moot.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 25, 2024