UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORTEZ HARDRICK,**<br><br>   Plaintiff,<br><br>   v.<br><br>**DISTRICT OF COLUMBIA,**<br><br>   Defendant. | No. 1:23-cv-02151-TJK |

**JOINT STATUS REPORT**

On May 15, 2025, the Court issued a Minute Order directing the Parties to meet and confer about the scope of the jurisdictional discovery that Plaintiff seeks, and to file . . . a joint status report updating the Court on such potential jurisdictional discovery. Counsel for the Parties met and conferred via teleconference on May 16 and 19, 2025. The Parties have not reached agreement on Plaintiff's request for jurisdictional discovery. Each Party's position is set forth below.

**Plaintiff's Position**

Plaintiff Mr. Hardrick needs jurisdictional discovery to show that the Chief and the Firearms Registration Branch give immediate effect to revocations of registration certificates and CPLs, notwithstanding the statutory provisions governing when revocations take effect, which undercuts the District's contention that the Chief and the Firearms Registration Branch follow the regulatory scheme suggesting that revocations of registration certificates and CPLs do not become effective as a matter of law until after the time for appeal has expired.

The District's portion of this report depends largely on arguments on standing which Plaintiffs expects to address in the Opposition to Defendant's Motion [ECF No. 32] to Dismiss for Lack of Jurisdiction. In this report Plaintiffs focus on the jurisdictional discovery Mr. Hardrick needs and

why. The allegations in the complaint about revocation of the registration certificate and the CPL and the seizure and retention of the gun and the operation of the statutory framework establish Plaintiff's standing regarding injury and causation without the need for the specific allegations the District claims Mr. Hardrick needs. Mr. Hardrick reeds the jurisdictional discovery to rebuts a standing theory raised by the District in a procedurally deficient manner.

The three areas on which Mr. Hardrick needs pattern and practice discovery are:

**ONE:** Showing the Concealed Pistol License Review Board (the "Board")(abolished in 2022 and replaced by the Office of Administrative Hearings) had a practice of giving immediate effect to a revocation of a registration certificate by effectively revoking CPLs as soon as the District revokes a registration certificate (a prerequisite to a CPL) by immediately dismissing appeals from revocations of CPLs for lack of jurisdiction, rather than waiting for the expiration of the appeals period prescribed by the statute and the Chief's regulations;

**TWO:** The Chief's practice of marking registration certificates and CPLs as invalid (in the digital and paper records of the Firearms Registration Branch) once the Firearms Registration Branch issues notices of intent to revoke registration certificates and CPLs, as the Firearms Registration Branch did Mr. Hardrick's, which subjects holders of registration certificates and CPLs to arrest and detention once the Chief issues notices of intent to revoke registration certificates and CPLs; and

**THREE:** The Chief's practice of effective dispossessing registration certificate and CPL holders of their Second Amendment rights by retaining their handguns – as he did Mr. Hardrick's – long after so-called provisional revocations of registration certificates and CPLs are restored, and long after any charges requiring retention of the guns as "evidence" are rejected by the prosecutor, made possible by District statutes and regulations which require handguns to be registered, registration certificates as a prerequisite of CPLs, and exercise of a CPL limited to a specific registered handgun, so all three are needed to carry a handgun in public in the District, and removal of any one element dispossesses a CPL holder of their Second Amendment right to carry a handgun in public.

Mr. Hardrick is entitled to introduce the results of the discovery at this page because of the procedural posture of the lawsuit as Mr. Hardrick explained in his Opposition to the motion to stay discovery which he incorporates here. [ECF No. 36], Opposition to Motion to Stay Discovery. The District styles its challenge to Mr. Hardrick's standing to bring his Second Amendment claim as a motion to dismiss brought under F.R.C.P. 12(b)(1). [ECF No. 32], ECF

p. 1; [ECF No. 32-1], ECF p. 15. But the District does not base its motion on the allegations in the operative complaint [ECF No. 1]. Instead, the District bases its motion on Plaintiff's proposed Amended Complaint [ECF No. 28-1]. For example, the District cites to ¶ 61 of Plaintiff's proposed Amended Complaint. [ECF No. 32-1], ECF p. 50 ("Plaintiff boldly asserts: "Revocations of registration certificates and CPLs by the Chief . . . are effective immediately pursuant to MPD and District law and practice . . . ." Prop. Am. Compl. ¶ 61.). Those allegations are based on the administrative record in the revocation proceedings before the Chief and the Concealed Pistol License Review Board (the "Board"). (copies of relevant documents attached as Exhibit 9)

Therefore, because the motion is brought after the District's motion to dismiss [ECF No. 8], after entry of a Scheduling Order and after commencement of discovery (discovery email attached), the "motion" should be treated as a motion for summary judgment. "[T]he *Lujan* Court decided the issue of standing on a motion for summary judgment, rather than on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court did so even though a challenge to standing unquestionably involves a challenge to subject matter jurisdiction." ARTICLE: LITIGATING ARTICLE III STANDING: A PROPOSED SOLUTION TO THE SERIOUS (BUT UNRECOGNIZED) SEPARATION OF POWERS PROBLEM, 162 U. Pa. L. Rev. 1373, 1374 (May 2014) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 562 (1992).

Furthermore, the issue involves an analysis of technical statutes and regulations so Mr. Hardrick lays out the regulatory background before listing the jurisdictional discovery he needs.

**Facts of this case alleged in the original complaint [ECF No. 1], the operative complaint**

In this case, based on the allegations in the original complaint [ECF No. 1], the MPD seized Mr. Hardrick's handgun from the console of his Tesla where he kept it while driving,

3

charged him with negligent storage, and revoked his registration certificate and his CPL for "negligent storage" pursuant to D.C. Code @ 7-2507.02(B) even though the statute has an element "if he knows or reasonably should know that a minor is likely to gain access to the firearm without the permission of the parent or guardian of the minor unless such person," and no minors were present in Mr. Hardrick's vehicle. Furthermore, the statute applies to "premises," not to vehicles.

The Chief retained Mr. Hardrick's handgun long after the AUSA, the relevant prosecutor, denied the MPD's application for an arrest warrant for negligent storage. It seems the only remaining legal basis for the Chief to hold the gun after the "evidentiary hold" was lifted was D.C. Code § 7-2502.10(d) ("If a firearm is in the possession of the Chief, the Chief may maintain possession of the firearm for which the registrant is temporarily or permanently prohibited from having lawful possession until final disposition of the matter.").

The allegations in the original complaint and proposed amended complaint show that the Chief seized Mr. Hardrick's handgun and held it long after the negligent storage charge was rejected by, that is, "no-papered by, the relevant prosecutorthe AUSA, must be read together with the allegations that the Chief, through the Firearms Registration Branch, revoked his registration certificate and his CPL because the Chief's retaining his handgun (the only handgun he could own and carry with is registration certificate and his CPL) after the prosecutor "no-papered" the negligent storage charge effected a dispossession of Mr. Hardrick even after the Chief voluntarily reversed the revocation of his registration certificate because of the way the registration and licensing statutes operate together.

**The District contention that Plaintiff lacks standing to bring a Second Amendment claim**

The District contends that Plaintiffs lack standing to bring a Second Amendment claim because Plaintiff cannot show that he suffered an injury in fact for two reasons based on extrinsic

4

evidence, that is, allegations in the proposed Amended Complaint [ECF No. 28-1]: (1) the Chief's revocation of his registration certificate and his CPL never took legal effect because Plaintiff alleges that he timely appealed the revocations of his registration and CPL, they never took effect as a matter of law, (2) even if the revocations had taken effect, Plaintiff does not allege that they prevented him from recovering his firearm or exercising his Second Amendment rights.

**Regulatory Background**

The District's gun control regime requires a person to have a registration certificate to possess a handgun in the District.1 D.C. Code § 7-2502.01(a). Each gun must be registered separately so a registration certificate is required for each gun. Id.  Moreover, a registration certificate for the gun one intends to carry in public is a prerequisite for a "CPL," a concealed carry pistol license. D.C. Code § 7-2509.02(a)(2)(prerequisite for obtaining or maintaining a CPL is that applicant/ holder "has obtained a registration certificate for the pistol that the person is applying to carry concealed"). Therefore, the handgun one intends to carry, the registration certificate for that handgun, and the CPL linked to that handgun through the registration certificate are joined together like a three-leaf clover – you cannot carry a gun in public in the District without all three. Therefore, seizing and detaining a handgun works a dispossession the same as revoking a registration certificate or a CPL because of the operation of the District's gun

---

[1] There is a distinction between licensing the owner of the firearm and registering the weapon itself: *Heller v. Distinct o[Columbia*, 670 F.3d 1244, 1248 (2011) (*Heller II*). The main provisions relating to registration certificates and CPLs are: (registration certificate: D.C. Code § 7- 2502.03(a)(6A), DCMR § 24-2309(f)(1); CPL D.C. Code § 7-2509.11(a)(1)(A), D.C. Code § 7-2509.02 (which includes possession of a registration certificate for the handgun the person wishes to carry); 24 DCMR § 2335.1(d)).

control regime and the unfettered discretion of the Chief to seize and retain handguns and to revoke registration certificates and CPLs.

**The jurisdictional issue**

The District contends that Plaintiffs lack standing to bring a Second Amendment claim because the revocations never became legally effective because he successfully appealed them. But the in fact because of the District's practices, revocations of registration certificates and CPLs become effective for purposes of standing and liability/ damages immediately upon issuance of the notice of intent to revoke regardless of the test of the statutes. Plaintiffs need jurisdictional discovery in support of these practices.

See D.C. Code § 7-2502.10(a)("The Chief's decision [to revoke a registration certificate] shall become effective at the expiration of the time within which to file a notice of appeal pursuant to Chapter 5 of Title 2 [§ 2-501 et seq.] or, if such a notice of appeal is filed, at the time the final order or judgment of the District of Columbia Court of Appeals becomes effective.")

See D.C. Code § 7-2509.05(a)(4) [2022 version]("[b}efore a … revocation [of a CPL] taking effect, the Chief shall serve a notice of intent to … revoke the license. The … revocation shall take effect unless the licensee requests an appeal to the Concealed Pistol Licensing Review Board established pursuant to § 7-2509.08 no later than 15 days after the date of the notice of intent."). Now appeals from revocations of CPLs go to the OAH.

**The pattern and practice jurisdictional discovery Mr. Hardrick needs now.**

Mr. Hardrick needs discovery into the following examples of how the Chief/ Firearms Registration Branch give immediate effect to revocations of registration certificates and CPLs in his case and other cases to show that this is how the chief, the final policymaker for the District on gun control, administers the regulatory scheme.

6

A. **Dismissals of appeals of CPL revocations.**

The pattern Plaintiffs' counsel in this case and other cases and other practitioners see is:

Chief sends notice of (proposed) revocation of registration certificate and CPL

Holder of registration certificate and CPL appeals the revocation of the registration certificate to Chief (FRB) and appeals the revocation of the CPL to the Board.

But Board dismissed appeal for lack of jurisdiction (because the registration certificate was revoked) immediately without waiting to see if the holder would succeed in their appeal of the revocation of the registration certificate. Therefore, the revocations have immediate effect and cause immediate injury.[2]

Plaintiffs need discovery into this patter toshow it rises to the level of a practice to show that this is how the Chief, the final policymaker for the District on gun control, administers the regulatory scheme.

B. **Chief's practice of marking registration certificates and CPLs as invalid (in the digital and paper records of the Firearms Registration Branch) once the Firearms Registration Branch issues notices of intent to revoke registration certificates and CPLs.**

Mr. Hardrick also needs discovery into what he believes is the Chief's -- through the Firearms Registration Branch's – practice of marking registration certificates and CPLs as invalid (in the digital and paper records of the Firearms Registration Branch) once the Firearms Registration Branch issues notices of intent to revoke registration certificates and CPLs. This has

---

[2] The statute provides that "[b}efore a … revocation taking effect, the Chief shall serve a notice of intent to … revoke the license. The … revocation shall take effect unless the licensee requests an appeal to the Concealed Pistol Licensing Review Board established pursuant to § 7-2509.08 no later than 15 days after the date of the notice of intent. D.C. Code § 7-2509.05."

So, if the CPL licensee appeals the Chief's revocation of the CPL, the CPL remains valid until the appeal of the CPL or until the Chief voluntarily reverses the revocation of the CPL.

real world consequences to holders of registration certificates and CPLs because MPD officers in the field rely on the digital and paper records of the Firearms Registration Branch when they stop holders of registration certificates and CPLs. Plaintiffs' counsel know of at least one person who was arrested for CPWL (carrying a pistol without a license) because his registration certificate and CPL were already listed as invalid in the Firearms Registration Branch records before the time for appeal had run out. That lawyer found out that several of his other clients had similar problems. Mr. Hardrick called Firearms Registration Branch after the Chief had reversed the revocation of his registration certificate and the Firearms Registration Branch told him the registry showed his registration certificate and CPL as invalid. Subjecting people to a risk of arrest and prosecution constitutes injury, and the Firearms Registration Branch told Mr. Hardrick his registration certificate and CPL showed as invalid.

This supports the contention that the Board/ MPD give immediate effect to "proposed" revocation of registration certificate, by immediately changing the status of the registration certificate and the CPL to invalid. Mr. Hardrick needs discovery on the pattern and practice of the Chief and the Firearms Registration Branch in other cases.

**C. Why the Chief kept Mr. Hardrick's handgun long after the charges pursuant to which it had been seized and held were rejected by the prosecutor.**

Mr. Hardrick needs discovery into why the Chief kept his handgun long after the **charges pursuant to which it had been seized and held were rejected by the prosecutor** and even after the Chief had reversed the revocation of the registration certificate. Plaintiff understands this is a practice. It supports Mr. Hardrick's claim of injury as a result of violation of his Second Amendment rights because the District dispossessed Mr. Hardrick based on unconstitutional regulations by seizing and keeping the only gun he could use with his registration certificate and

his CPL after any 'evidentiary hold" the MPD placed on the gun with the negligent storage charge had been rejected for prosecution by the prosecutor.

Since the registration certificate is keyed to the handgun, the Chief effectively dispossessed him by keeping the gun after restoring the registration certificate and CPL.

Mr. Hardrick needs jurisdictional discovery on why the Chief retained his handgun after the only charge against his had been rejected for prosecution by the prosecutor. Mr. Hardrick needs discovery on the Chief's policy and practice of holding guns.

### Defendant's Position

Plaintiff has not identified a valid basis for jurisdictional discovery. Defendant's Cross-Motion to Dismiss [32] (Motion to Dismiss), brought under Rule 12(b)(1), argues that Plaintiff lacks standing to assert his sole remaining claim. Mot. to Dismiss at 41; *see also* Mem. Op. & Order [19] at 24. Specifically, the District argues that Plaintiff's own allegations fail to plausibly plead the injury in fact on which his existing Second Amendment claim is based—the alleged revocations of his firearm registration certificate and concealed pistol license (CPL). Mot. to Dismiss at 41–45. That argument is based solely on—and assumes the truth of—the well-pled allegations in the Proposed Amended Complaint. Accordingly, the District's Motion to Dismiss does not rely on any materials extrinsic to the pleadings. Because the District's argument is that Plaintiff has not *alleged* an injury in fact, there are no "facts additional discovery could produce that would affect [the Court's] jurisdictional analysis." *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (quoting *Goodman Holdings v. Rafidain Bank,* 26 F.3d 1143, 1147 (D.C. Cir. 1994)) (affirming district court's denial of jurisdictional discovery and dismissal of claims for lack of subject matter jurisdiction).

Plaintiff argues that he needs discovery to show that MPD allegedly gives immediate effect to revocations of registration certificates and CPLs, notwithstanding the statutory

9

provisions governing when revocations take effect. But that discovery would not shed any light on whether Plaintiff has plausibly an injury in fact. Plaintiff's position statement points to two allegations that MPD gave immediate effect to Plaintiff's revocations: (1) the Concealed Pistol License Review Board (CPLRB) dismissed Plaintiff's appeal of the CPL revocation while Plaintiff's appeal of the registration revocation remained pending; and (2) MPD told Plaintiff that his CPL was still showing as revoked in their tracking system. Both of these allegations appear in the Proposed Amended Complaint, and the District's Motion to Dismiss assumes them to be true. Prop. Am. Compl. ¶¶ 60 (CPLRB dismissed Plaintiff's appeal of CPL revocation "for lack of jurisdiction because . . . his registration certificate had been revoked" while Plaintiff's appeal of registration revocation was pending); 77 (MPD told Plaintiff "that according to the official MPD tracking system for tracking registration certificates and CPLs, his CPL was showing as still revoked"). Plaintiff indicates that he needs discovery related to these allegations to show that they "rise[] to the level of a practice," apparently confusing the test for standing with *Monell*'s test for municipal liability. Whether the two alleged actions were taken due to a municipal policy has nothing to do with whether Plaintiff has plausibly alleged an injury in fact. For example, even if discovery revealed that a municipal policy caused the CPLRB's initial dismissal of Plaintiff's appeal, that would have no bearing on whether Plaintiff's CPL was revoked as a matter of law, that is, whether Plaintiff has alleged an injury in fact. To the extent Plaintiff asserts that these two alleged actions themselves constitute an injury in fact (even if the revocations never took effect as a matter of law), whether they were caused by a municipal policy is still irrelevant to the injury-in-fact analysis. The District recognizes that it argued that Plaintiff has not plausibly pled a municipal policy of giving immediate effect to revocations, Mot. to Dismiss at 43–44, but that deficiency is ultimately irrelevant to the District's Motion to

Dismiss because it relates, at best, to a different element of standing—causation—and the District's Motion argues only that Plaintiff has not alleged an injury in fact.[3] To be sure, Plaintiff will need to establish a municipal policy or custom to ultimately prevail on his Second Amendment claim, but he need not do so to plausibly plead an injury in fact.

Plaintiff also seeks discovery related to why MPD allegedly retained his handgun, but that has no bearing on whether he has alleged an injury in fact resulting from the alleged revocations either. In any event, Plaintiff's Proposed Amended Complaint alleges that MPD kept his handgun because MPD's Evidence Control Division was not releasing any handguns "at that time," Prop Am. Compl. ¶ 87, and the District's Motion to Dismiss—which addresses only Plaintiff's Second Amendment claim arising from the alleged revocations—assumes the truth of that allegation.

Plaintiff disagrees that the Court should test the legal sufficiency of his allegations with respect to standing. Pl's. Opp'n to Def.'s Mot. to Stay Discovery [36] (Pl.'s Stay Opp'n) at 8–10. But a challenge to the Court's subject matter jurisdiction may be raised "at any time," Fed. R. Civ. P. 12(h)(3), and the Supreme Court has explicitly endorsed the application of the motion-to-dismiss standard in resolving jurisdictional challenges at the pleading stage, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to defeat a motion to dismiss). Because Plaintiff's Proposed Amended Complaint is a (proposed) pleading to which the District

---

[3] The District included this argument because the Proposed Amended Complaint conclusorily asserts that "[r]evocations of registration certificates and CPLs by the Chief . . . are effective immediately pursuant to MPD and District law and practice . . . ." Prop. Am. Compl. ¶ 61. *Monell*-related deficiencies aside, that allegation is not relevant to whether Plaintiff's CPL was revoked as a matter of law, and thus, whether Plaintiff has pled the injury in fact that underlies his Second Amendment claim.

11

responded through its consolidated Motion to Dismiss and Opposition to Plaintiff's Motion for Leave, *see* Fed. R. Civ. P. 12(b), the Court should—indeed, must—evaluate whether Plaintiff has plausibly pled an injury in fact.

As Defendant understands it, Plaintiff's argument is that, because Defendant's Motion to Dismiss relies on allegations in Plaintiff's Proposed Amended Complaint, it must be treated as a motion for summary judgment. Pl.'s Stay Opp'n at 9. Plaintiff has offered no authority to support that proposition. Federal Rule of Civil Procedure 12(d) states: "If, on a motion under *Rule 12(b)(6)* or *12(c)*, matters *outside the pleadings* are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (emphases added). But the District's Motion to Dismiss is brought under Rule 12(b)(1), and it does not present matters outside the pleadings. Rule 56(d) does not support Plaintiff's position either because Defendant's Motion to Dismiss does not require Plaintiff to "present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). Rather, Plaintiff need only identify allegations (in his own pleadings) that plausibly allege a concrete injury in fact. As the foregoing makes evident, the summary judgment standard that Plaintiff argues the Court should apply is more demanding *of Plaintiff*. *Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'") (citing Fed. R. Civ. P. 56(e)).

For the foregoing reasons, the Court should deny Plaintiff's request for jurisdictional discovery.

Dated:  May 19, 2025.

/s/ William Claiborne
WILLIAM CLAIBORNE [446579]

717 D Street, N.W., Suite 300
Washington, D.C. 20004
Phone:  (202) 824-0700
Email:  clairbornelaw@gmail.com

*Counsel for Plaintiff*

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

/s/ Matthew Blecher
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

/s/ Honey Morton
HONEY MORTON [1019878]
Assistant Chief, Equity Section

/s/ Gregory Ketcham-Colwill
GREGORY KETCHAM-COLWILL [1632660]
MARCUS D. IRELAND [90005124]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
Phone:  (202) 702-2910
Email:  marcus.ireland@dc.gov

*Counsel for Defendant*